IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WASEEM DAKER, | :: | CIVIL ACTION NO. |
|     Petitioner, | :: | 1:10-CV-03815-RWS-ECS |
| | :: | |
| v. | :: | |
| | :: | |
| NEIL WARREN, Cobb County Sheriff, | :: | HABEAS CORPUS |
|     Respondent. | :: | 28 U.S.C. § 2241 |

**MAGISTRATE JUDGE'S ORDER
AND REPORT AND RECOMMENDATION**

Petitioner Waseem Daker, a Georgia pretrial detainee currently confined at the Cobb County Detention Center in Marietta, Georgia, challenges via 28 U.S.C. § 2241 the constitutionality of his continued detention without bail. Now before the Court are his habeas corpus petition, as amended [1, 13], with supporting brief [7]; Respondent's response [4] with supporting exhibits [4-1]; Daker's traverse [8]; and Daker's motions to expedite [9, 11]. For the reasons set forth below, it is recommended that the habeas corpus petition be **DENIED**.

**I. Procedural History**

**A.    State Court Proceedings**

Daker states that he was arrested on January 15, 2010, on a Cobb County warrant charging him with malice murder, felony murder, burglary, aggravated

assault, and aggravated stalking, all of which occurred on October 23, 1995. (Pet. ¶ 6, ECF No. 1.) On January 16, 2010, during his first appearance before a magistrate judge, he requested a bond hearing, which was scheduled for February 9, 2010, twenty-four days later. (Id. ¶ 7.) On January 29, he again requested a bond hearing, which was scheduled for, and held, twenty days later, on February 18, 2010. (Id. ¶¶ 8-9.)

    At the combined probable cause/bond hearing on February 18, at which Daker was represented by retained counsel, attorney Brian Steel, the trial court heard testimony from Daker's brother revealing that Daker (who was born in 1977) has family ties to Syria, where his parents were born and raised. The court also heard that Daker has lived in the Atlanta area since 1990; that after his release from state prison in 2005, following ten years of incarceration, until his arrest in January 2010, he worked in the family business as the general manager of a furniture store and lived with his family, who currently reside in a half-million dollar home; and that he has an expired Canadian passport, although it is unclear whether he has dual citizenship in Canada and the United States. (Probable Cause/Bond Hr'g Tr. at 31-41, ECF No. 4-1 at 39-49.) The state argued that Daker's family has "large assets" and "connections in Syria, where the family's from" and where Daker has traveled, and

2

that Daker had "connections to Canada" at some point as well: "He has the ability to flee, he has the connections to flee, he's a risk of flight." (Id., Hr'g Tr. at 54-55, ECF No. 4-1 at 62-63.) The trial court ruled as follows: "Well, murder is different . . . [addressing Daker's attorney], in the sense that somebody's facing a life sentence, so I think that's a strong motivation for someone to flee, or to think about fleeing. So, today I'm going to deny bond." (Id., Hr'g Tr. at 55.) Daker filed a state habeas petition, which was denied on June 24, 2010. The Georgia Supreme Court, on November 3, 2010, denied Daker's application for a certificate of probable cause to appeal that denial. (Pet. ¶ 10.)

**B.   Federal Habeas Petition**

In his original habeas petition, Daker raises three claims, alleging that in February 2010 the trial court violated his due process rights under the Fifth, Eighth, and Fourteenth Amendments when it (1) denied him bail "deeming him to be a flight risk solely on the basis that he is charged with murder," which denial he alleges was "arbitrary, capricious and an abuse of discretion"; (2) denied him bail based solely on the murder charge against him, which was "a failure to exercise discretion under O.C.G.A. § 17-6-1," the Georgia statute on Bonds and Recognizances (General Provisions); and (3) failed to hold a bond hearing within ten days after he requested

3

one, as required by O.C.G.A. § 17-6-1(d). (Pet. ¶¶ 11-13.) Daker seeks "immediate release from custody, subject to reasonable conditions," or, in the alternative, "a reasonable bond." (Id. ¶¶ 14-15.) In his amended petition (filed originally as a separate petition, and later consolidated herein), Daker raises six due process claims relating to the trial court's alleged delays in hearing, and ultimately denying, his later-filed bond hearing motions of August 23 and October 12, 2010, and the court's alleged failure to give him adequate notice before holding another bond hearing on September 24, 2010. (Am. Pet. at 3-7, ECF No. 13.) In a seventh claim, Daker, now representing himself in his criminal proceedings, alleges various constitutional violations based on the difficulties involved in conducting his own defense while incarcerated. (Id. at 8-9.)

## II.  Standard of Review

**A.    Exhaustion of State Court Remedies**

A fundamental prerequisite for federal habeas relief is that the petitioner must first exhaust other available remedies. See Fain v. Duff, 488 F.2d 218, 223 (5th Cir. 1973) (noting that judicially created exhaustion requirement, although codified at 28 U.S.C. § 2254(b) for collateral attacks on state court convictions, "applies to all habeas corpus actions"); see also Thomas v. Crosby, 371 F.3d 782, 812 (11th Cir.

2004) (Tjoflat, J., concurring) (noting that "[a]mong the most fundamental common law requirements of § 2241 is that petitioners must first exhaust their state court remedies"). The codification of the exhaustion requirement at § 2254(b) prohibits a district court from granting habeas relief to a petitioner in custody pursuant to the judgment of a state court unless it appears that either (1) the petitioner "has exhausted the remedies available in the courts of the State"; (2) "there is an absence of available State corrective process"; or (3) "circumstances exist that render such process ineffective to protect the [petitioner's] rights." 28 U.S.C. § 2254(b)(1)(A)-(B). Moreover, a petitioner "shall not be deemed to have exhausted" the available state court remedies "if he has the right under the law of the State to raise, by any available procedure," the claims he has presented in his federal habeas corpus petition. 28 U.S.C. § 2254(c). Although the Supreme Court has rejected a strict interpretation of § 2254(c), "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

### B.     Merits Review

A federal court may not grant habeas corpus relief to "a person in custody pursuant to the judgment of a State court" based on claims previously adjudicated by a state court unless the resulting decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Here, of course, Daker is in custody due to the denial of bond, and not pursuant to the judgment of a state court, so that, by its own terms, the deferential standard of review set forth in § 2254 would not apply.

Although there appears to be no definitive caselaw in this circuit regarding the standard of review that should apply in a challenge to the denial of bond, the consensus among the circuits, at least with respect to double jeopardy claims brought by pretrial detainees, appears to be that federal courts should conduct *de novo* review of the state court decisions at issue. See Martinez v. Caldwell, No. 08-617-D-M2, 2009 U.S. Dist. LEXIS 126977, at *18 (M.D. La. Nov. 2, 2009) (stating that "[t]he majority of the federal courts that have considered the issue and that have found that a pretrial detainee's habeas petition presenting a double jeopardy challenge should

6

be brought under § 2241 have concluded that such petitions should be reviewed under a *de novo* standard, not the deferential § 2254 standard") (citing cases); see, e.g., Walck v. Edmondson, 472 F.3d 1227, 1235 (10th Cir. 2007) (stating that Tenth Circuit reviews § 2241 habeas claims *de novo*). Accordingly, the undersigned will conduct a *de novo* review of Daker's claims. Under that standard, "a court's task is to determine whether the . . . decision [at issue] is 'wrong' – that is, whether the court disagrees with it." Dunn v. Cox, 560 F. Supp. 2d 1247, 1253 (M.D. Fla. 2008) (citing Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1137-38 (11th Cir. 2004), for proposition that when applying *de novo* standard of review, court affords no deference to decision under review, and its task is to determine whether it disagrees with that decision).

### III.  Discussion

For the most part, Daker argues that the trial court violated Georgia state law when it denied him release on bail. (See generally Br. Supp. Pet. Writ Habeas Corpus, ECF No. 7.) This Court may not, however, grant Daker federal habeas relief merely on the basis of a violation of state law. See 28 U.S.C. § 2241(c)(3) (providing that "writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States"); Branan v.

7

Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (holding that "habeas petition grounded on issues of state law provides no basis for habeas relief," even "when a petition, which actually involves state law issues, is couched in terms of equal protection and due process") (internal quotations omitted); O'Malley v. McNeil, No. 1:07-cv-228, 2010 U.S. Dist. LEXIS 142097, at *19 (N.D. Fla. Sept. 21, 2010) (Magistrate Judge's Report and Recommendation, citing Engle v. Isaac, 456 U.S. 107, 119 (1982), for proposition that "a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution"), adopted by 2011 U.S. Dist. LEXIS 27460 (N.D. Fla., Mar. 15, 2011).

Daker cites United States v. Salerno, 481 U.S. 739, 754 (1987), for the proposition that "when the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal, and no more." He also cites Stack v. Boyle, 342 U.S. 1, 4-6 (1951), for the propositions that "[u]nless th[e] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning"; that "the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant"; that "[b]ail set at a figure higher than an amount reasonably calculated to fulfill this purpose is 'excessive'

8

under the Eighth Amendment"; and that "[t]o infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act." (See Br. Supp. Pet. Writ Habeas Corpus at 11, 13, 16.) Daker also argues that under Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1 (1979), he has a liberty interest, protected by the Due Process Clause of the Fourteenth Amendment, in a bond hearing within ten days of his request for one, as required by O.C.G.A. § 17-6-1(d). He claims that the state violated this due process right by holding a bond hearing on February 18, 2010, more than twenty days after his original request. (Br. Supp. Pet. Writ Habeas Corpus at 19-20). Daker's Supplemental Citation of Authority (ECF No. 15) adds nothing to the substance of his prior arguments.

"The Eighth Amendment to the Constitution, applicable to the States through the Due Process Clause of the Fourteenth Amendment, . . . provides that [e]xcessive bail shall not be required . . . ." Campbell v. Johnson, 586 F.3d 835, 842 (11th Cir. 2009) (internal quotations omitted). However, "*the Excessive Bail Clause does not guarantee a right to bail . . . .*" Id. (emphasis added). "The government's interest in securing the appearance of a defendant at trial is constitutionally sufficient to warrant pretrial detention where necessary to insure that the defendant will not flee the jurisdiction." United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985) (citing

9

Stack, 342 U.S. at 4). Accordingly, the trial court's denial of bail to Daker did not violate the Eighth Amendment prohibition against excessive bail because Daker was detained and no bail was set at any amount.

Likewise, Daker's Fourteenth Amendment due process rights have not been violated.

> Courts may order a defendant detained pretrial consistent with the Due Process Clause of the Fifth Amendment [which protects the same interests in life, liberty, and property as does the Due Process Clause of the Fourteenth Amendment] as long as that detention is not "punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also United States v. Salerno, 481 U.S. 739, 746 (1987). "Absent an expressed intention to punish, whether detention constitutes impermissible punishment or permissible regulation turns on whether the government has a nonpunitive reason for detention and whether detention 'appears excessive in relation to' the nonpunitive purpose." United States v. Millan, 4 F.3d 1038, 1043 (2d Cir. 1993) (quoting Wolfish, 441 U.S. at 538). Pretrial detention to prevent flight from the jurisdiction is an important, nonpunitive, regulatory purpose.

United States v. Stanford, 722 F. Supp. 2d 803, 806, 808 (S.D. Tex. 2010) (rejecting inmate's "contention that his pretrial detention violates his due process rights simply because it will have been nineteen months by the time his trial begins"). "To determine whether the length of a pretrial detention violates a defendant's due process rights, [courts weigh]: (i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon

10

which the detention was based . . . ." United States v. Orena, 986 F.2d 628, 630 (2d Cir. 1993); see also United States v. Hare, 873 F.2d 796, 801 (5th Cir. 1989) (noting that "the due-process limit on the duration of preventive detention requires assessment on a case-by-case basis, *for the clause establishes no specific limit on the length of pretrial confinement*," and "additional factors [to consider are] the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay") (emphasis added) (footnote omitted); United States v. Noriega, 746 F. Supp. 1548, 1561-62 (S.D. Fla. 1990) (noting absence of "bright-line rule" for determining "at what point continued detention threatens to violate due process").

There is no indication in the record of this case that the State of Georgia intended to punish Daker by ordering his detention without bail. For the reasons set forth during the February 18, 2010 bond hearing – among other things, Daker's family's wealth and overseas connections – the trial court reasonably concluded that Daker, facing a mandatory life sentence if convicted of murder, was an unacceptable flight risk. Although Daker strenuously disagrees with this conclusion, his arguments that the trial judge's decision was arbitrary or erroneous are without merit. Moreover,

11

Daker's pretrial detention, although now almost fifteen months, had lasted only ten months at the time he filed his federal habeas petition in November 2010. Given the seriousness of the charges against Daker and the risk of his flight, the duration of his detention does not at this time implicate the protections of the Due Process Clause. See Stanford, 722 F. Supp. 2d at 806 (concluding that nineteen month detention without bond did not violate pretrial detainee's due process rights). Furthermore, there is no indication in the record, and Daker does not suggest, that the prosecutor's strategy has caused any delay in his trial. See Hare, 873 F.2d at 801. In fact, counsel for Respondent has informed the Court that Daker, who is now representing himself in his state court criminal proceedings, has filed an interlocutory appeal regarding the trial court's ruling on a pretrial matter, other than the denial of bond, which has delayed his own trial – and, necessarily, his continued detention – indefinitely.

With respect to the claim regarding the failure to hold the bond hearing within the ten-day period set forth in Georgia law, Daker has failed to allege a cognizable violation of his due process rights under the Constitution. In Greenholtz, the case upon which Daker relies, the Supreme Court stated:

> It is axiomatic that due process is flexible and calls for such procedural protections as the particular situation demands. The function of legal process, as that concept is embodied in the Constitution, and in the

12

> realm of factfinding, is to minimize the risk of erroneous decisions. Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error.

442 U.S. at 12 (citations and internal quotations omitted). There is nothing in this language, in any other Supreme Court language of which this Court is aware, or in the arguments that Daker has offered, suggesting that the minimal delay in setting his February 2010 bond hearing – approximately thirty days after he first requested it – violated due process of law or created an unconstitutional risk of error. Therefore, based on the arguments and supporting case law that Daker has presented, his third and final claim in his original habeas petition also fails.

Finally, there is no indication in Daker's amended habeas petition that, before executing and filing that amended petition on or about March 2, 2011, he exhausted his state court remedies with respect to his claims related to his August 23 and October 12, 2010 bond hearing motions; the trial court's alleged failure to provide notice for his September 24, 2010 bond hearing; or the difficulties he has encountered in attempting to represent himself while in detention. Therefore, all of his claims with

13

respect to those matters are due to be dismissed for his failure to exhaust state court remedies. See Boerckel, 526 U.S. at 845.

### IV. Certificate of Appealability

A state prisoner must obtain a certificate of appealability (COA) before appealing the denial of his federal habeas petition. 28 U.S.C. § 2253(c)(1)(A). This Court "must issue or deny a certificate of appealability when it enters a final order adverse to" a habeas petitioner. Rule 11(a) of the Rules Governing Section 2254 Cases (also providing that "[i]f the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22").

A COA may issue only when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). A petitioner need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." Lamarca v. Sec'y,

14

Dep't of Corr., 568 F.3d 929, 934 (11th Cir. 2009) (citing Miller-El v. Cockrell, 537 U.S. 322, 337, 342 (2003)).

The undersigned does not find any issue of arguable merit set forth in Daker's original and amended habeas petitions, and, therefore, recommends that a COA be denied.

## V.  Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DENY** Daker's petition for a writ of habeas corpus [1], as amended [13], **DISMISS** this action, and **DENY** Daker a certificate of appealability.

Daker's motions to expedite [9, 11] are **DENIED AS MOOT**.

The Clerk is **DIRECTED** to terminate the referral to the Magistrate Judge.

**IT IS SO ORDERED AND RECOMMENDED** this 9th day of May, 2011.

*/s/ E. Clayton Scofield III*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| WASEEM DAKER, | :: | CIVIL ACTION NO. |
|    Petitioner, | :: | 1:10-CV-03815-RWS-ECS |
| | :: | |
| v. | :: | |
| | :: | |
| NEIL WARREN, Cobb County Sheriff, | :: | HABEAS CORPUS |
|    Respondent. | :: | 28 U.S.C. § 2241 |

## ORDER FOR SERVICE OF REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Attached is the Report and Recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and this Court's Local Rules 72.1 and 58.1. Let the same be filed and a copy, with a copy of this order, be served upon counsel for the parties.

Each party may file written objections, if any, to the Report and Recommendation within fourteen (14) days of receipt of this Order. Fed. R. Civ. P. 72(b); Rule 8(b), Rules Governing Section 2254 Cases. Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party. The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court. If no objections

AO 72A
(Rev.8/82)

are filed, the Report and Recommendation may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to plain error review. <u>United States v. Slay</u>, 714 F.2d 1093, 1095 (11th Cir. 1983).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED** this 9th day of May, 2011.

*/s/ E. Clayton Scofield III*
E. CLAYTON SCOFIELD III
UNITED STATES MAGISTRATE JUDGE